**[J-42-2016][M.O. – Todd, J.]**

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 63 MAP 2015 |
| | : | |
| Appellee | : | Appeal from the Order of the Superior |
| | : | Court at No. 396 MDA 2014 dated |
| v. | : | 10/8/14 reconsideration denied 12/2/14 |
| | : | affirming the judgment of sentence of |
| | : | Dauphin County Court of Common |
| KHIRI ARTER, | : | Pleas, Criminal Division, at No. CP-22- |
| | : | CR-0001297-2012, dated 2/4/14 |
| Appellant | : | |
| | : | |
| | : | ARGUED:  April 5, 2016 |

**DISSENTING OPINION**

**CHIEF JUSTICE SAYLOR**                    **DECIDED:  December 28, 2016**

I respectfully dissent, since, as a predicate to application of the exclusionary rule in the context of parole revocation proceedings, I would require a factual determination concerning whether officers involved proceeded with an improper motive.

Since state courts, in the 1970s, began to ground departures from federal constitutional doctrine upon interpretations of their own state constitutions' counterparts to provisions of the United States Constitution, this "new judicial federalism" has been the subject of substantial debate.  A prominent line of controversy centers upon the imposition, by state courts, of an exclusionary rule where the United States Supreme Court has determined that none should apply.  *See, e.g.*, Lawrence Friedman, *Reactive and Incompletely Theorized State Constitutional Decision-Making*, 77 MISS. L.J. 265, 300 (2007) (positing that this Court's seminal decision in *Commonwealth v. Edmunds*,

526 Pa. 374, 586 A.2d 887 (1991), failed to supply "a coherent theory to explain how the exclusionary rule should be understood and applied" for purposes of state constitutional law).

In terms of considering when the Pennsylvania Constitution should be invoked to justify suppression of evidence in the search-and-seizure setting, I agree with those who emphasize that Article I, Section 8 of the state charter and the Fourth Amendment to the United States Constitution reflect what, to their respective framers, was the same normative protection. *See Commonwealth v. Schaeffer*, 370 Pa. Super. 179, 238-39 & nn.6-7, 536 A.2d 354, 384 & nn.6-7 (1987) (Kelly, J., concurring and dissenting) (explaining that the terms presently reposed in Article I, Section 8 were adopted by the Pennsylvania General Assembly in 1790, contemporaneous with the Legislature's ratification of the Fourth Amendment, and highlighting the close similarity of such respective provisions); *accord* Arthur Leavens, *State Constitutionalism: State-Court Deference or Dissonance?*, 33 W. NEW ENG. L. REV. 81, 82-83 (2011) (making the same point concerning the Massachusetts analogue to the Fourth Amendment). I also believe that prominent decisions in the Pennsylvania line of the new judicial federalism have inordinately ignored or downplayed the nearly-200 years of history throughout which this Court had maintained the common law approach of refusing to impose an exclusionary precept, over and against arguments advocating for its recognition under the Pennsylvania Constitution. *See generally Commonwealth v. Russo*, 594 Pa. 119, 134, 934 A.2d 1199, 1208 (2007) (collecting cases and explaining that "*no* decision of this Court has squarely purported to examine and disapprove of the long and unbroken line of pre-*Mapp [v. Ohio, 367 U.S. 643, 81 S. Ct. 1684 (1961)]* decisions holding that, far

from recognizing greater exclusionary-rule-related privacy rights, Article I, Section 8 contained no exclusionary remedy whatsoever" (emphasis in original)).[1]

From my point of view, the failure to remediate the early lapses in the above respects -- as the new judicial federalism has matured and the Court has continued to selectively sanction instances of departure from federal constitutional doctrine -- has left the Court vulnerable to criticisms of revisionism and diminished legitimacy in this line of decisions. *See, e.g.*, McCarthy, *Counterfeit Interpretations*, 58 SYRACUSE L. REV. at 135-36; *cf.* James W. Diehm, *New Federalism and Constitutional Criminal Procedure: Are We Repeating the Mistakes of the Past?*, 55 MD. L. REV. 223, 244 (1996) (referring to a "perplexing melange of disparate constitutional principles" reflected in state constitutional law decisions); James A. Gardner, *The Failed Discourse of State Constitutionalism*, 90 MICH. L. REV. 761, 763 (1992) (characterizing various departure pronouncements under state constitutions as reflecting a "vast wasteland of confusing, conflicting, and essentially unintelligible pronouncements"). Since the exclusionary rule

---

[1] For example, the majority references *Commonwealth v. Sell*, 504 Pa. 46, 470 A.2d 457 (1983), for the proposition that the survival of the normative protection embodied in Article I, Section 8 "through over 200 years of profound change in other areas demonstrates that the paramount concern for privacy . . . continues to enjoy the mandate of the people of this Commonwealth." Majority Opinion, *slip op.* at 12 (quoting *Sell*, 504 Pa. at 65, 470 A.2d at 467). As in a number of this Court's previous decisions, however, this manner of presentation downplays the fact that, throughout most of this 200-year history, this Court did not believe that such mandate should encompass any requirement that evidence secured in violation of constitutional rights must be suppressed. *See Russo*, 594 Pa. at 133, 934 A.2d at 1207 ("[A]ny historical survey respecting . . . *any* suppression case under the Pennsylvania charter, hits a brick wall in 1961; there is *no* relevant history to support a broader state constitutional interpretation because there was no point in seeking such an interpretation, at least in a criminal case, since there was no exclusionary remedy available." (emphasis in original)); *accord* Francis Barry McCarthy, *Counterfeit Interpretations of State Constitutions in Criminal Procedure*, 58 SYRACUSE L. REV. 79, 117 (2007) ("Any claim by one of the fourteen states that rejected the exclusionary rule that the state has a long history of protecting state constitutional rights must ring hollow.").

was imposed on Pennsylvania under federal constitutional doctrine after a prolonged period of Commonwealth-level rejection, *see Russo*, 594 Pa. at 132-34, 934 A.2d at 1207-08, it should be apparent that, when this Court has expanded the field of mandatory suppression on state constitutional grounds, it has built upon a foundation constructed by the Supreme Court of the United States, not one solidly premised upon unique state sources. The *Edmunds* formulation notwithstanding, I submit that the departure cases expanding the exclusionary rule ultimately distill to policy choices on the part of the prevailing majorities pertaining to a non-textual, judge-made convention which should be administered with great restraint. *See Commonwealth v. Williams*, 454 Pa. 368, 372, 312 A.2d 597, 600 (1973).[2]

The Court had recently moved to a more overt cost-benefit balancing between the value of extending exclusion as a "remedy,"[3] and the corresponding impairment to the truth-determining process in the administration of justice. *See Henderson*, 616 Pa. at 289, 47 A.3d at 804 ("The greatest difficulty in the enforcement of a prophylactic rule intended to guard individual liberties is on account of the competing value in society's

---

[2] Parenthetically, I observe that this Court's Article I, Section 8 jurisprudence otherwise seemed to have been trending toward retrenchment in recent years. *See, e.g.*, *Commonwealth v. Gary*, 625 Pa. 183, 242, 91 A.3d 102, 138 (2014) (plurality) (reflecting the present culmination of decades of controversy via the adoption of the federal automobile exception to the warrant requirement as a matter of state constitutional law); *Commonwealth v. Henderson*, 616 Pa. 277, 289-90, 47 A.3d 797, 804-05 (2012) (refusing to enforce an independent-source requirement under the Pennsylvania Constitution in the absence of police misconduct).

[3] Notably, the remedial aspect of suppression is indirect, as the exclusion of evidence does not, "strictly speaking, remedy the privacy, dignity, and security harms that the relevant constitutional provisions seek to prevent." Aziz Z. Huq, *Judicial Independence and the Rationing of Constitutional Remedies*, 65 Duke L.J. 1, 18 (2015). Nevertheless, I recognize that "[e]xclusion is fairly ranked as a remedy to the extent it is sought by a putatively injured party, and purports to eliminate an advantage that the state as counterparty possesses as a consequence of the constitutional wrong." *Id.*

interest in identifying and punishing wrongdoers.").  From my point of view, particularly given that offenders in the parole revocation setting have a lesser expectation of privacy, and in light of the strong societal interest in ensuring compliance with parole-release requirements, I find that the more restrained and appropriate balance is to decline to award suppression in parole-revocation proceedings in the absence of a judicial determination that law enforcement or supervising officials acted with an improper motive.  *See, e.g.*, *Logan v. Commonwealth*, 688 S.E.2d 275, 278-79 (Va. 2010) (implementing such an approach, while defining "bad faith" as directed to scenarios in which "the search was motivated by bias, personal animus, a desire to harass, a conscious intent to circumvent the law, or a similar improper motive").

Finally, I would also suggest that such an approach would have a greater potential for sustainability relative to a balancing assessment concerning which reasonable minds will always differ.  *Accord Henderson*, 616 Pa. at 290, 47 A.3d at 805 (positing that "the 'twin aims' of Article I, Section 8 – namely, the safeguarding of privacy and enforcement of the probable-cause requirement – may be vindicated best, and most stably, by taking a more conservative approach to the departure this Court has taken from the established Fourth Amendment jurisprudence").